1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    KAIMIN JIMMY JEN,                      Case No.  15-cv-03834-HSG

8                    Plaintiff,             **ORDER GRANTING IN PART AND
                                            DENYING IN PART MOTION TO**
9          v.                               **DISMISS; GRANTING IN PART AND
                                            DENYING IN PART SPECIAL MOTION**
10   CITY AND COUNTY OF SAN                 **TO STRIKE; SETTING CASE**
     FRANCISCO, et al.,                     **MANAGEMENT CONFERENCE**
11                  Defendants.
                                            Re: Dkt. Nos. 6 & 7

12

13         Before the Court are Defendant City and County of San Francisco's ("San Francisco")

14   motion to dismiss and special motion to strike the complaint, Dkt. No. 1 ("Compl."), filed by

15   Plaintiff Kaimin Jimmy Jen ("Plaintiff").  Dkt. No. 6 ("MTS") & 7 ("MTD").  San Francisco

16   contends that Plaintiff's claims are res judicata and barred by state law immunity, the applicable

17   statutes of limitations, and standing doctrine.  In support of these arguments, San Francisco

18   requests judicial notice of certain materials from past judicial proceedings involving Plaintiff.

19   Dkt. Nos. 9 ("RJN 1") & 23 ("RJN 2").  Plaintiff has filed a consolidated opposition, Dkt. No. 17

20   ("Opp."), and San Francisco has filed a consolidated reply, Dkt. No. 21 ("Reply").

21         For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**

22   San Francisco's motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** its special

23   motion to strike.

24   **I.     BACKGROUND**

25         **A.     1998 Private Contract Dispute**

26         Plaintiff alleges that he entered into a contract in 1998 with Defendant City Attorney

27   Dennis Herrera ("City Attorney Herrera"), then the President of the Police Commission, to do

28   construction work at Herrera's residence.  Compl. ¶ 10.  City Attorney Herrera allegedly requested

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   that Plaintiff engage in illegal permitting activity to complete the project because he thought that

2   persons of Chinese descent operating as contractors in San Francisco, like Plaintiff, routinely

3   engaged in such business practices.  *Id.* ¶¶ 11-13.  Plaintiff refused, but did legally acquire one

4   permit.  *Id.* ¶¶ 12-13.  City Attorney Herrera then allegedly refused to pay for these services,

5   despite the fact that he had renewed the permit in October 2003 and used it to complete certain

6   illegal construction on his home.  *Id.* ¶¶ 14-16.  Plaintiff did not discover that Herrera used the

7   permit until July 2014.  *Id.* ¶ 14.

8        Based on these allegations, and liberally construing the complaint, Plaintiff asserts causes

9   of action under California law against City Attorney Herrera alone for breach of contract, fraud,

10  and breach of the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 63-66.

11      **B.**    **1999 Complaint About Building Code Enforcement**

12       In 1999, Plaintiff allegedly discovered that Defendant Rafael Tores-Gil ("Tores-Gil"), who

13  was then an employee of the code enforcement division of San Francisco's building department,

14  was engaged in an illegal scheme with a San Francisco deputy city attorney to cite buildings for

15  code violations in poor areas, condemn them, purchase the buildings, and then resell them.  *Id.* ¶

16  17.  Plaintiff brought this to the attention of another deputy city attorney, which caused the City

17  Attorney's Office to become angry with him.  *Id.*  In retaliation for this complaint and based on

18  Plaintiff's Chinese race, Tores-Gil created false building code violations regarding construction on

19  a building that Plaintiff owned.  *Id.* ¶ 18.  When Plaintiff complained to the director of the building

20  department, Tores-Gil was suspended.  *Id.*  But the City Attorney's Office later overturned his

21  suspension.  *Id.*

22       Based on these allegations, and liberally construing the complaint, Plaintiff asserts causes

23  of action under California law against all Defendants for intentional infliction of emotional

24  distress and racial and national origin discrimination under California Civil Code 52.1(b), as well

25  as federal claims based on racial and national origin discrimination and conspiracy to commit the

26  same under 42 U.S.C. §§ 1981, 1983 and 1985.  *Id.* ¶¶ 34-47, 58-62.

27      **C.**    **2000 Nuisance Lawsuit and 2006 Bankruptcy**

28       In 2000, Plaintiff purchased an abandoned building in San Francisco that had undergone

numerous illegal alterations. *Id.* ¶ 19. Plaintiff filed building permit applications and abated the violations, but Tores-Gil ordered a site inspection that resulted in a nuisance lawsuit against Plaintiff, brought by the City Attorney's office. *Id.* Plaintiff represented himself at trial and lost, subjecting him to a fine and attorneys' fees totaling $1.2 million, as well as an injunction requiring pre-approval by the City Attorney's Office for his building permits. *Id.* ¶ 20. As a result, Plaintiff declared bankruptcy in 2006. *Id.*

Based on these allegations, and liberally construing the complaint, Plaintiff asserts causes of action under California law against all Defendants for intentional infliction of emotional distress and racial and national origin discrimination under California Civil Code 52.1(b), as well as federal claims based on racial and national origin discrimination and conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983 and 1985. *Id.* ¶¶ 34-47, 58-62.

**D.    2007 Criminal Charges and 2008 Dismissal**

In 2007, City Attorney Herrera asked the District Attorney's Office to bring criminal charges against Plaintiff regarding a permit that Plaintiff had filed in 1999 on a property in San Francisco. *Id.* ¶ 21. To do so, City Attorney Herrera allegedly provided fabricated facts about Plaintiff's work on the property to the District Attorney's Office to make it appear that he had done work without plans and a permit. *Id.* ¶ 22. Plaintiff believes that the prosecution was retaliatory and motivated by racial animus. *Id.* In August 2008, all of the charges against Plaintiff were dismissed by the court. *Id.*

Based on these allegations, and liberally construing the complaint, Plaintiff asserts causes of action under California law against all Defendants for intentional infliction of emotional distress, malicious prosecution, and racial and national origin discrimination under California Civil Code 52.1(b) regarding his arrest and searches incident thereto, as well as federal claims based on racial and national origin discrimination and conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983, and 1985. *Id.* ¶¶ 34-62.

**E.    2010 Criminal Arrest, 2013 Probable Cause Finding, and 2014 Dismissal**

In October 2008, City Attorney Herrera urged the District Attorney's Office to conduct another criminal investigation into Plaintiff regarding a forged signature and license stamp used on

3

Plaintiff's construction projects. *Id.* ¶ 23. Defendant Michael Kloss from the District Attorney's Office was the head of the investigation. *Id.* ¶ 24. Despite knowing that the investigation had no merit, Defendants Herrera and Kloss pressed forward. *Id.* ¶¶ 24-25. For example, a handwriting examiner retained by San Francisco indicated that he could not ascertain whether Plaintiff had committed the forgery. *Id.* ¶ 25. But Herrera and Kloss encouraged witnesses to lie and falsified evidence to obtain search and arrest warrants. *Id.* ¶¶ 28-29. For its part, San Francisco failed to prevent these retaliatory and racially-motivated actions. *Id.* ¶¶ 32-33.

As a result, in February 2009, Kloss searched Plaintiff's office, causing his eviction from the premises and the close of his business. *Id.* ¶ 26. Kloss also planted GPS devices on Plaintiff's vehicles without a warrant and harassed his family. *Id.* And on August 3, 2010, Kloss filed 232 felony charges against Plaintiff and successfully sought bail of $50 million, leaving Plaintiff in prison pending trial for four years. *Id.* ¶ 27. During that time, City Attorney Herrera allegedly made false statements about Plaintiff and pronounced him guilty to the public. *Id.* ¶¶ 30-31. On August 8, 2014, all charges were dismissed against Plaintiff and he was released. *Id.* ¶ 27.

Based on these allegations, and liberally construing the complaint, Plaintiff asserts causes of action under California law against all Defendants for intentional infliction of emotional distress, false arrest, malicious prosecution, and racial and national origin discrimination under California Civil Code 52.1(b) regarding his arrest and searches incident thereto, as well as federal claims for racial and national origin discrimination and conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983 and 1985. *Id.* ¶¶ 34-62.

### F.    Procedural History

On February 3, 2015, Plaintiff formally filed claims against Defendants under California Government Code § 905, *et seq. Id.* ¶ 27. Those claims were denied on February 26, 2015. *Id.* On August 21, 2015, Plaintiff filed the instant action. Dkt. No. 1. San Francisco moves to strike the complaint as an improper attack on Defendants' constitutional right of petition under California Civil Code § 425.16 and has moved to dismiss on a variety of grounds, including res judicata, state law immunity, the applicable statutes of limitations, and standing doctrine.

///

United States District Court
Northern District of California

1  **II.  REQUEST FOR JUDICIAL NOTICE**

2          Before reaching the substance of San Francisco's motions, the Court addresses its requests

3  for judicial notice.  San Francisco asks the Court to take notice of documents containing factual

4  allegations, factual findings, legal arguments, and legal conclusions from several related actions

5  and proceedings discussed in Plaintiff's complaint.  RJN 1 & RJN 2.

6          These materials include: (1) the complaint and judgment from Plaintiff's civil lawsuit, *Jen

7  v. Kwok, et al.*, No. 313-017, filed June 19, 2000, in San Francisco Superior Court; (2) certain

8  pleadings and the final decree in *In re Jimmy Jen aka Kai-Min Jimmy Jen*, No. 06-30533, filed

9  June 30, 2006, in United States Bankruptcy Court for the Northern District of California; (3) the

10  final hearing transcript and judgment in *Andrea Wirum, Trustee of the Chapter 7 Estate of Jimmy

11  Jen aka Kai-Min Jimmy Jen v. Jimmy Jen aka Kai-Min Jimmy Jen*, No. 06-03184, filed December

12  6, 2006, in United States Bankruptcy Court for the Northern District of California; (4) docket

13  excerpts from and hearing transcripts from the preliminary hearing in *People of the State of

14  California v. Kaimin Jimmy Jen*, No. 220545, in San Francisco Superior Court; (5) certain records

15  related to Plaintiff's government claim, including a rejection letter and a declaration.  *Id.*

16          The Court may take judicial notice of documents "not subject to reasonable dispute."  Fed.

17  R. Evid. 201(b).  Proceedings, including orders and filings, in other courts, including state courts,

18  are the proper subject of judicial notice if those proceedings "have a direct relation to the matters

19  at issue."  *Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (internal citations omitted).

20  These documents may include hearing transcripts.  *Engine Mfrs. Ass'n v. S. Coast Air Quality

21  Mgmt. Dist.*, 498 F.3d 1031, 1039, n.2 (9th Cir. 2007).  But the Court will not take notice of facts

22  from other proceedings for the truth of the matters they assert.  *See Lasar v. Ford Motor Co.*, 399

23  F.3d 1101, 1117, n.14 (9th Cir. 2005) (declining to take judicial notice of findings made in a state

24  court proceeding "because [defendants were] offering the factual findings contained in the order

25  for the purpose of proving the truth of the factual findings contained therein").  The Court will

26  take notice of these materials, however, to the extent that they explain the procedural posture of

27  the case, including the nature of the orders entered by other courts.  *See Tigueros*, 658 F.3d at 987

28  (taking notice of state court documents because they were "directly related" to the posture of the

case).

Here, the Court takes judicial notice of the fact of the existence of each of the documents set forth in San Francisco's request for judicial notice, including the fact of the existence of the arguments and findings made in the documents, with the exception of Exhibit F-2, the declaration of Matthew Rothschild, which is offered exclusively for the truth of the matters asserted in it.

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is still appropriate, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation

United States District Court
Northern District of California

marks and citation omitted).

### B.     California Code of Civil Procedure § 425.16

California's anti-SLAPP statute, Code of Civil Procedure § 425.16, is "designed to allow courts to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression." *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1176 (9th Cir. 2015) (internal quotations omitted).  Under the statute, a party may file a motion to strike a cause of action against it if the complaint "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425(b)(1).  To defeat a special motion to strike, a plaintiff must "establish[] that there is a probability that the plaintiff will prevail on the claim." *Id.*

## IV.    DISCUSSION

The Court now turns to the substance of San Francisco's motion to dismiss and special motion to strike.  The motion to dismiss is addressed first because that analysis will inform the special motion to strike.  The Court finds that all of Plaintiff's claims are time-barred or subject to absolute immunity, except those relating to his 2010 arrest and 2014 prosecution, and must be dismissed with prejudice.  Those same claims must also be stricken, except for Plaintiff's causes of action against City Attorney Herrera, which do not concern protected constitutional activity.

### A.     Motion to Dismiss

#### 1.     1998 Private Contract Dispute with City Attorney Herrera

San Francisco contends that Plaintiff's breach of contract and fraud causes of action against City Attorney Herrera relating to their 1998 private construction contract are time-barred. Plaintiff does not respond to this argument.

Under California law, the statute of limitations for actions upon a contract varies between two and four years depending on whether the alleged contract was committed to writing.  *See* Cal. Code Civ. Proc. §§ 337, 339; *see also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 682-84 (1988) (alleged breach of implied covenant of good faith and fair dealing treated as action upon a contract in this context).  But in either case, "[a] cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running." *Church v. Jamison*, 143 Cal.

1   App. 4th 1568, 1577 (2006).   Although Plaintiff does not allege whether his construction contract

2   with City Attorney Herrera was oral or written, it does not change the analysis given the length of

3   his delay.  Plaintiff alleges actual notice of the purported breach by June 2000 when City Attorney

4   Herrera told Plaintiff that he "owed him nothing."  Compl. ¶ 14.  Accordingly, Plaintiff's 15-year

5   old breach-of-contract causes of action are time-barred as a matter of law.  Because no facts could

6   be alleged to remedy this defect, in light of facts Plaintiff already has pled, the Court dismisses

7   this contract cause of action with prejudice.  *See Weisbuch*, 119 F.3d at 783 n.1.

8          Plaintiff also asserts a cause of action for fraud regarding this contract dispute.  Under

9   California law, the statute of limitations for fraud is three years.  Cal. Code Civ. Proc. § 338(d).

10  Promissory fraud is the only type of fraud possible under the facts alleged (in other words,

11  Plaintiff alleges that City Attorney Herrera never had any intention of paying Plaintiff when they

12  entered into their contract).  *See Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) ("A promise to

13  do something necessarily implies the intention to perform; hence, where a promise is made

14  without such intention, there is an implied misrepresentation of fact that may be actionable

15  fraud.").  An action for promissory fraud would have accrued at the same time as Plaintiff's breach

16  of contract cause of action, the date of City Attorney Herrera's alleged breach.  *Engalla v.*

17  *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, (1997) (the last element of promissory fraud is

18  "resulting damage"); Compl. ¶ 14 (date of alleged breach, the source of resulting damage).

19  Accordingly, Plaintiff's 15-year old fraud cause of action is time-barred as a matter of law.

20  Because no facts could be alleged to remedy this defect, the Court dismisses the fraud cause of

21  action with prejudice.

22          Finally, Plaintiff asserts a cause of action for breach of the covenant of good faith and fair

23  dealing, which provides that "no party to a contract may do anything that would deprive another

24  party of the benefits of the agreement."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th

25  390, 400 (2000).  A claim for the covenant of good faith and fair dealing has a four year statute of

26  limitations if it sounds in contract, as here.  *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136,

27  1144 n.4 (1990); Compl. ¶¶ 64-66.  This claim would have accrued at the same time as Plaintiff's

28  breach of contract claim, in June 2000.  Accordingly, Plaintiff's 15-year old good faith claim is

1   time-barred as a matter of law.  Because no facts could be alleged to remedy this defect, the Court

2   dismisses the breach of covenant cause of action with prejudice.

3           2.        <u>Building Code Enforcement Actions in 1999, 2000, and 2007</u>

4           a)     *State Law Causes of Action*

5       San Francisco contends that Defendants have absolute immunity from liability for causes

6   of action alleged under California law relating to the building code enforcement activities against

7   Plaintiff in 1999, the nuisance lawsuit against Plaintiff in 2000, and the criminal charges pressed

8   against Plaintiff in 2007.  MTD at 16.[1]  Plaintiff does not directly address this argument.

9       California law provides that "[a] public employee is not liable for an injury caused by his

10  instituting or prosecuting any judicial or administrative proceeding within the scope of his

11  employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.

12  "The provision's principal function is to provide relief from malicious prosecution."  *Blankenhorn*

13  *v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007).  "But the statute also extends to actions

14  taken in preparation for formal proceedings, including actions incidental to the investigation of

15  crimes."  *Id.* (citing *Amylou R. v. Cnty. of Riverside*, 28 Cal. App. 4th 1205, 1208-09 (1994)).

16  Immunity is therefore granted to any public employee involved in instituting or prosecuting any

17  such investigations or proceedings.  *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 756-757

18  (1997).  And where a public employee is immune from liability under that statute, the public entity

19  employer is also derivatively immune.  *Id.* § 815.2; *Amylou R.*, 28 Cal. App. 4th at 1208-09.

20      By Plaintiff's own account, Defendants' conduct occurred in the context of building code

21  enforcement proceedings, both civil and criminal.  Compl. ¶¶ 17-18 (alleging that Tores-Gil

22  retaliated against Plaintiff by instituting building code enforcement actions against him); ¶¶ 19-20

23  (alleging that Tores-Gil retaliated against Plaintiff by ordering a site inspection that resulted in a

24  nuisance lawsuit); ¶¶ 21-22 (alleging that City Attorney Herrera retaliated against Plaintiff by

25

26  [1] San Francisco does not contend that Defendants are immunized from liability under Plaintiff's federal claims, as "conduct by persons acting under color of state law which is wrongful under 42

27  U.S.C. § 1983 or § 1985(3) *cannot* be immunized by state law."  *Howlett ex rel. Howlett*, 496 U.S. 356, 376 (1990) (emphasis original); *accord Redmond v. San Jose Police Dept.*, No. 14-cv-02345,

28  2016 WL 3162236, at *4 (N.D. Cal. Jun. 7, 2016) (applying *Howlett* to hold that California Government Code § 821.6 cannot immunize § 1983 liability).

pressing criminal charges relating to illegal construction).  With the exception of Plaintiff's civil rights claim based on false arrest, as discussed below, that is all protected activity under California Government Code § 821.6.  *See Shanko v. Lake Cnty.*, 116 F. Supp. 3d 1055, 1066-67 (N.D. Cal. 2015) (§ 821.6 immunizes California employees from California causes of action regarding building code enforcement); *Gillian v. City of San Marino*, 147 Cal. App. 4th 1033, 1050 (2007) (§ 821.6 immunity extends to intentional infliction of emotional distress liability).  Accordingly, Plaintiff's state law causes of action regarding Defendants' building code enforcement activity from 1999, 2000, and 2007, with the exception noted above, are dismissed with prejudice.

California Government Code § 821.6 does not, however, immunize civil rights causes of action under California Civil Code § 52.1 based on false arrest.  *Gillian*, 147 Cal. App. 4th at 1050 ("Because Government Code section 821.6 provides no immunity from liability for false arrest or false imprisonment, section 821.6 provides no immunity from liability under Civil Code section 52.1 based on an arrest without probable cause.") (internal citation omitted); *cf. Cnty. of Los Angeles v. Super. Ct.*, 181 Cal. App. 4th 218, 231 (2009) (holding that the government defendants were immunized from § 52.1 claim if based on improper search and seizure).  Because Plaintiff's California Civil Code § 52.1 claim appears to be based on false arrest, California Government Code § 821.6 does not immunize Defendants from liability under that cause of action.

But Plaintiff's § 52.1 cause of action must be dismissed because he did not plead that he filed a government claim against Defendants, which is a prerequisite to filing a suit for damages against a public entity or public employees acting in their official capacity.  Cal. Gov't Code § 945.4 (public entity); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988) (applies to public employees acting in official capacity); *State v. Super. Ct.*, 32 Cal. 4th 1234, 1243 (2004) (must plead filing of government claim as element of cause of action).  Because it is not clear to the Court whether Plaintiff can in good faith amend his complaint to do so, it is dismissed with leave to amend.[2]  A government claim not relating to a personal injury cause of

---

[2] San Francisco's attempt to show that Plaintiff did not file a timely government claim by judicial notice fails.  First, the attached form letter denying Plaintiff's government claims as untimely does not state which claims were untimely.  *See* RJN 1, Ex. F-1.  Second, even if it did, the Court cannot accept as true at the dismissal stage that Plaintiff's filing was actually untimely based on

*United States District Court*
*Northern District of California*

1  action must generally be presented within one year of accrual.  Cal. Gov't Code § 911.2(a).

2                    b)       *Federal Claims*

3       Plaintiff also asserts federal claims based on racial and national origin discrimination and

4  conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983 and 1985 in connection with these

5  building code enforcement proceedings.  *Id.* ¶¶ 34-47, 58-62.  San Francisco contends that these

6  claims are time-barred as a matter of law.  MTD at 11.  Plaintiff does not address this argument.

7       Claims brought under 42 U.S.C. § 1983 apply the statute of limitations for personal injury

8  torts for the state in which the cause of action arose.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

9  In California, that limitations period is two years.  Cal. Code Civ. Proc. § 335.1.  Claims brought

10  under 42 U.S.C. § 1985 are governed by the same limitations period as § 1983 claims.  *McDougal*

11  *v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991).  And claims brought under 42 U.S.C. §

12  1981 are subject to a two- or four-year statute of limitations depending on whether the action is

13  based on a post-1990 amendment to the statute.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S.

14  369, 372 (2004).  Because this is not an employment action based on a post-1990 amendment, the

15  § 1981 claim applies the two year period.  *Jimmie's Limousine Serv., Inc. v. City of Oakland*, No.

16  C 04-03321, 2005 WL 2000947, at *3 (N.D. Cal. Aug. 18, 2005).  Each of these claims accrues

17  for the purpose of triggering the start of its limitations period "when the plaintiff knows or has

18  reason to know of the injury which is the basis of the action."  *Lukovsky v. City and Cnty. of San*

19  *Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008) (quotation marks and citation omitted).

20       Here, Plaintiff's claims would have accrued, at the very latest, when he complained about

21  the 1999 building code citations that Torres-Gil issued, when the judgment in the nuisance suit

22  was entered, and when the 2007 criminal charges were dismissed.  Specifically, for the 1999 code

23  citations, the accrual date was October 12, 2000.  RJN 1, Ex. A-2.  For the 2000 nuisance suit,

24  accrual occurred by 2006.  Compl. ¶ 20.  And for the 2007 criminal charges, accrual occurred in

United States District Court
Northern District of California

26  this document.  *See Lee v. Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (district court
properly took judicial notice of existence of publicly-recorded, signed extradition waiver form, but

27  "erred by taking judicial notice of disputed matters" in concluding that signer of form in fact validly
waived his rights).  Finally, the Rothschild Declaration, which avers that Plaintiff did not file any

28  timely government claims pertinent to this action, is not properly subject to judicial notice.  *See*
RJN 1, Ex. F-2.  This declaration is properly considered only at summary judgment.

1   August 2008.  *Id.* ¶ 22.  Applying a two-year statute of limitations to these dates, the Court finds

2   that all of Plaintiff's federal claims are time-barred as a matter of law.  Because, for the same

3   reasons discussed above with regard to the state law claims, no new facts could be alleged to

4   remedy these deficiencies, the Court dismisses these claims with prejudice.

3.   2010 Arrest and 2014 Criminal Prosecution

6       The Court now turns to Plaintiff's federal and state law claims for malicious prosecution

7   that started with his arrest in 2010 and culminated with the dismissal of all charges in 2014.

8   Unlike Plaintiff's other claims, San Francisco does not contend that these claims are time-barred.

9   San Francisco does contend, however, that Defendants are immune from liability on Plaintiff's

10   state law claims and that all of Plaintiff's claims are barred by the doctrine of collateral estoppel.

a)   *State Law Causes of Action*

12      For the same reasons set forth above, California Government Code § 821.6 bars Plaintiff's

13   state law causes of action against Defendants for malicious prosecution and intentional infliction

14   of emotional distress.  *See Blankenhorn*, 485 F.3d at 487-88.  Those causes of action are dismissed

15   with prejudice.  But, also as explained above, that immunity does not extend to the state law false

16   arrest cause of action or the civil rights claims that are derivative of false arrest.  *See Gillian*, 147

17   Cal. App. 4th at 1050.  Accordingly, the Court cannot grant San Francisco's motion to dismiss as

18   to these causes of action under California Government Code § 821.6.  San Francisco also contends

19   that these false arrest causes of action are barred by the doctrine of collateral estoppel; the Court

20   will address this issue in connection with Plaintiff's federal claims, discussed below.

b)   *Federal Claims*

22      With respect to his 2010 arrest and 2014 prosecution, Plaintiff alleges that Defendants

23   violated his federal civil rights (and conspired to do so) by maliciously prosecuting him because of

24   his Chinese race and national origin.  Compl. ¶¶ 40, 42-44.  "In order to prevail on a § 1983 claim

25   of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice

26   and without probable cause, and that they did so for the purpose of denying [him] equal protection

27   or another specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th

28   Cir. 2004) (internal quotation marks omitted; brackets original).  "Malicious prosecution actions

United States District Court
Northern District of California

12

1    are not limited to suits against prosecutors but may be brought . . . against other persons who have

2    wrongfully caused the charges to be filed." *Id.* The same is true with respect to a claim of false

3    arrest. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). As an initial

4    matter, the Court finds that Plaintiff's allegations state valid federal civil rights claims.

5    San Francisco contends, however, that Plaintiff is collaterally estopped from asserting

6    these federal claims because the state court, after a lengthy preliminary hearing, found there was

7    probable cause to prosecute Plaintiff. *See* RJN 1, Ex. E (transcripts from the preliminary hearing

8    in which the magistrate found probable cause). Plaintiff responds that a finding of probable cause

9    does not bar a subsequent § 1983 action for malicious prosecution if the plaintiff is able to show

10   the defendants relied on fraudulent evidence to prosecute his preliminary hearing. Opp. at 15-19.

11   Broadly speaking, "[c]ollateral estoppel precludes relitigation of issues argued and decided

12   in prior proceedings." *Diruzza v. Cnty. of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003) (quoting

13   *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)). Under California law, collateral estoppel bars

14   litigation if (1) the issue sought to be precluded is identical to that decided in a former proceeding;

15   (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided

16   in the former proceeding; (4) the decision in the former proceeding was final and on the merits;

17   and (5) the party to be estopped was a party to the former proceeding or in privity with a party to

18   the former proceeding. *Id.* "As a general rule, each of these requirements will be met when courts

19   are asked to give preclusive effect to preliminary hearing probable cause findings in subsequent

20   civil actions for false arrest and malicious prosecution." *Wige v. City of Los Angeles*, 713 F.3d

21   1183, 1185 (9th Cir. 2013); *see also Awabdy*, 368 F.3d at 1068 ("When an individual has a full

22   and fair opportunity to challenge a probable cause determination during the course of the prior

23   proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim.").

24   "However, collateral estoppel does not apply when the decision to hold a defendant to

25   answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the

26   result of other wrongful conduct by state or local officials." *Awabdy*, 368 F.3d at 1068 (citing

27   *McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138, 1147-48 (1999)). There are two reasons

28   for this rule. First, from a purely technical perspective, collateral estoppel can bar litigation of an

United States District Court
Northern District of California

United States District Court
Northern District of California

issue only where that issue is identical to one presented a prior proceeding.  *Wige*, 713 F.3d at

1185.  That requirement is not satisfied where a plaintiff asserting a malicious prosecution claim

newly alleges that evidence presented in the underlying preliminary hearing was fabricated or

otherwise false.  *Id.* at 1186.  Second, "a decision by a judge or magistrate to hold a defendant to

answer after a preliminary hearing constitutes *prima facie*–but not *conclusive*-evidence of

probable cause."  *Awabdy*, 368 F.3d at 1067 (emphasis original).  For that reason, it is possible

that "a plaintiff can rebut a *prima facie* finding of probable cause [] by showing that the criminal

prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful

conduct undertaken in bad faith."  *Id; see also Wige*, 713 F.3d at 1186 (explaining that the

"fabricated evidence exception allows plaintiffs who can establish that an officer lied or fabricated

evidence to relitigate the issue of probable cause with the falsified evidence removed from the

equation or, in cases involving intentional concealment of exculpatory evidence, with the

undisclosed evidence added back into the equation").  Taken together, *Wige* and *Awabdy* establish

that collateral estoppel is not appropriate where a plaintiff alleges and can show that a probable

cause finding was induced by fraud.

    Invoking the essence of the collateral estoppel exception discussed in *Awabdy* and *Wige*,

Plaintiff alleges that the state court magistrate's probable cause finding at the preliminary hearing

in the underlying criminal proceeding was procured by fraud such that collateral estoppel cannot

bar this action.  Compl. ¶¶ 23-25; Opp. at 15-19.  San Francisco replies that even if Plaintiff's

allegations qualify for this exception to the collateral estoppel doctrine, Plaintiff already raised his

claims of fraudulent testimony before the magistrate, who made a credibility determination in the

prosecution's favor.  Applying a recent decision from the California Courts of Appeal, San

Francisco contends that this determination collaterally estops Plaintiff from re-litigating the issue

of misconduct and, therefore, probable cause.  *See Greene v. Bank of Am.*, 236 Cal. App. 4th 922,

933-35 (2015).  In support, San Francisco points to several evidentiary claims that Plaintiff raised

at the preliminary hearing that it asserts the magistrate rejected.  MTD at 8 n.4, Reply at 3-4.

    To begin, the Court must determine whether the rule set forth in *Greene* is controlling and,

if so, how it applies in the context of a motion to dismiss.  In *Greene*, the state court found that a

plaintiff asserting a § 1983 claim for malicious prosecution was collaterally estopped from arguing a lack of probable cause for his underlying criminal prosecution, despite alleging that testimony at the preliminary hearing was fabricated, because he presented that claim to the state court and it was rejected.  236 Cal. App. 4th at 933-35.  The court noted that the "plaintiff challenged [the witness's] veracity at [the] preliminary hearing and the magistrate expressly found that [the witness] was telling the truth when she testified about plaintiff's [illegal conduct]."  *Id.* at 934. Because the "the magistrate decide[d] the credibility issue in the arresting officer's favor," the fabricated evidence claim was already litigated, with the effect that the identity-of-issues requirement of collateral estoppel was satisfied.  *Id.*  For that reason, the court found that the case before it was distinguishable from *Wige*.  *Id.* at 935.

The Court first finds that *Greene* does provide a valid exception to the fabricated evidence exception to the collateral estoppel doctrine described in *Awabdy* and *Wige*.  *Wige* itself appears to have anticipated *Greene*'s holding.  In *Wige*, the plaintiff, who was asserting a § 1983 malicious prosecution claim, also claimed that collateral estoppel did not bar his action under the fabricated evidence exception.  *Id.* at 1186.  As in *Greene*, the defendants responded that the plaintiff had raised his fabricated evidence claim in the underlying preliminary hearing and the magistrate had implicitly rejected it.  *Id.*  The Ninth Circuit disagreed, stating that "the state court never purported to find either that [one witness's] testimony was credible or that [another witness's] testimony was not."  *Id.* at 1187.  The court noted that "in some circumstances a probable cause finding necessarily entails a rejection of challenges raised to the veracity of the [witness in the preliminary hearing]," but found that principle did not apply based on the facts presented.  *Id.*  This statement suggests that the Ninth Circuit would follow *Greene* in the appropriate case, and the Court will do so now.  The Court reads *Greene* to establish the following rule: where a plaintiff alleges a claim for malicious prosecution or false arrest and the defendant shows that the court in the underlying criminal case found probable cause, that plaintiff cannot avoid collateral estoppel by alleging that fraud or other wrongful conduct induced that finding if (1) he raised the same factual basis for his wrongful conduct claim in the preliminary hearing and (2) that argument was necessarily rejected.

The Court concludes, however, that San Francisco has failed to show that *all* of Plaintiff's

United States District Court
Northern District of California

claims of fraud and other misconduct with respect to the preliminary hearing that are alleged in the complaint were raised and necessarily rejected by the magistrate.  Plaintiff alleges that "[t]wo other projects prepared by a 'GJM' from whom the forgery emanated were never even questioned much less accused."  Compl. ¶ 24.  San Francisco does not address this allegation in its papers and the Court could not locate any mention of this claim in the preliminary hearing transcript.  *See* RJN, Ex. E.  In deciding whether this claim is sufficient to preclude a finding of collateral estoppel at this stage, the Court notes that it must liberally construe Plaintiff's pro se pleadings.  Applying that standard, the Court finds that the allegations of misconduct raised during the preliminary hearing are not completely identical to those raised in the complaint.  Accordingly, the Court cannot find on a motion to dismiss that Plaintiff is collaterally estopped from pursuing his malicious prosecution claim.[3]  The Court notes that it has not found any case holding that this type of issue was appropriately resolved against a plaintiff at the motion to dismiss stage.  *See, e.g.*, *Awabdy*, 368 F.3d at 1067-68 (reversing district court's grant of motion to dismiss); *see also, e.g.*, *Wige*, 713 F.3d at 1186-87 (reversing district court's grant of motion for summary judgment); *Greene*, 236 Cal. App. 4th at 933-35 (affirming trial court's grant of summary judgment).

For these reasons, San Francisco's motion to dismiss Plaintiff's federal civil rights claims under §§ 1981, 1983, and 1985 regarding his 2010 arrest and 2014 prosecution, as well as his remaining false arrest claims relating to those same factual allegations, is denied.  At the summary judgment stage, San Francisco can make its case that Plaintiff cannot produce sufficient evidence of fraud or other misconduct relating to the preliminary hearing for the case to proceed to trial.  To that end, the Court's strong inclination is to bifurcate discovery under Federal Rule of Civil Procedure 26(c) to first focus on Plaintiff's allegation that the magistrate's probable cause finding

---

[3] San Francisco cites *Frommhagen v. Board of Supervisors of Santa Cruz County*, 197 Cal. App. 4th 1292, 1301 (1987), for the principle that "[t]he collateral estoppel aspect of res judicata will apply as to all issues which were involved in the prior case even though some factual matters or legal arguments which could have been presented in the prior case in support of such issues were not presented."  MTD at 3.  While San Francisco accurately quotes *Frommhagen*, that case did not involve the collateral estoppel effect of a probable cause finding in a later malicious prosecution action.  *See Frommhagen*, 197 Cal. App. at 1301.  *Awabdy*, *Wige*, and *Greene* provide detailed guidance regarding the meaning of the identity-of-issues requirement in the identical circumstance present in this case, without ever discussing *Frommhagen*.  For this reason, *Frommhagen* does not change the Court's analysis of the identity-of-issues factor.

1    was procured by either fabricated testimony or evidence introduced at the preliminary hearing or

2    by the intentional concealment of exculpatory evidence.  This discovery would be further confined

3    to claims that the magistrate did not necessarily resolve against Plaintiff at the preliminary

4    hearing.  The parties should be prepared to discuss this issue further at the case management

5    conference.

6        **B.        Special Motion to Strike**

7            The Court now turns to San Francisco's special motion to strike Plaintiff's state law causes

8    of action under California Code of Civil Procedure § 425.16, which is known as the anti-SLAPP

9    statute.  California's anti-SLAPP statute is "designed to allow courts to promptly expose and

10   dismiss meritless and harassing claims seeking to chill protected expression."  *Davis v. Elec. Arts*

11   *Inc.*, 775 F.3d 1172, 1176 (9th Cir. 2015).  Under the statute, a defendant may move to strike a

12   cause of action against it if the complaint "aris[es] from any act of that person in furtherance of the

13   person's right of petition or free speech under the United States Constitution or the California

14   Constitution in connection with a public issue."  Cal. Code Civ. Proc. § 425(b)(1).  If a defendant

15   shows the conduct at issue is protected activity, the plaintiff must then "establish[] that there is a

16   probability that [he] will prevail on the claim."  *Id.*

17       1.        Applicability of Anti-SLAPP Statute

18           A defendant in federal court on diversity jurisdiction may bring an anti-SLAPP motion in

19   response to causes of action brought under California law.  *U.S. ex rel. Newsham v. Lockheed*

20   *Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).  Courts in this district, including

21   this one, have permitted an anti-SLAPP motion to be filed against California causes of action

22   asserted under supplemental jurisdiction.  *E.g.*, *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2015

23   WL 5158458, at *2 (N.D. Cal. Sept. 2, 2015) (citing *Globetrotter Software, Inc. v. Elan Computer*

24   *Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999)).  Plaintiff's California causes of action are

25   asserted under supplemental jurisdiction because there is no basis for diversity jurisdiction.  But

26   under the Court's precedent, that is sufficient to permit San Francisco's anti-SLAPP motion.

27       2.        Protected Activity

28           San Francisco contends that all of Plaintiff's causes of action, with the exception of those

United States District Court
Northern District of California

17

1    that flow exclusively from his contract dispute with City Attorney Herrera, arise from Defendants'

2    protected activity.  The anti-SLAPP statute provides that the term of art, "act in furtherance of a

3    person's right of petition or free speech under the United States or California Constitution in

4    connection with a public issue," Cal. Code Civ. Proc. § 425.16(b)(1), includes:

> (1) any written or oral statement or writing made before a
> legislative, executive, or judicial proceeding, or any other official
> proceeding authorized by law, (2) any written or oral statement or
> writing made in connection with an issue under consideration or
> review by a legislative, executive, or judicial body, or any other
> official proceeding authorized by law, (3) any written or oral
> statement or writing made in a place open to the public or a public
> forum in connection with an issue of public interest, or (4) any other
> conduct in furtherance of the exercise of the constitutional right of
> petition or the constitutional right of free speech in connection with
> a public issue or an issue of public interest.

11   *Id.* § 425.16(e).  Accordingly, San Francisco argues that all of Defendants' challenged conduct

12   relating to any investigation or prosecution of Plaintiff is protected activity.

13           The Court finds that all of Defendants' conduct that relates to their public enforcement

14   actions against Plaintiff, both civil and criminal, constitutes protected activity under the anti-

15   SLAPP statute.  As an initial matter, public employees acting within the scope of their employment

16   and their public employers are not automatically exempt from the protection of the anti-SLAPP

17   statute.  *Vargas v. City of Salinas*, 46 Cal. 4th 1, 17-19 (2009); *see also Schaffer v. City and Cnty.*

18   *of San Francisco*, 168 Cal. App. 4th 992, 998-1004 (2008) (holding that police officers' conduct

19   within the scope of their employment was protected activity).  Because there is no such blanket

20   exemption, the plain language of the definition of protected activity in the statute encompasses all

21   of Defendants' statements that were made either during or in connection with any executive or

22   judicial proceeding.  Specifically, that includes Defendants' 1999 building code citations, 2000

23   nuisance lawsuit, and the 2007 and 2010 criminal prosecutions.  Accordingly, Plaintiff's California

24   claims relating to this conduct are within the scope of the anti-SLAPP statute.  *See Jarrow*

25   *Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734-35 (2003) ("[E]very Court of Appeal that has

26   addressed the question has concluded that malicious prosecution causes of action fall within the

27   purview of the anti-SLAPP statute."); *accord Dickens v. Provident Life and Accident Ins. Co.*, 117

28   Cal. App. 4th 705, 716 (2004) ("[A] malicious prosecution action predicated upon a defendant's

United States District Court
Northern District of California

1    alleged participation in procuring a criminal prosecution against a plaintiff falls within the ambit of

2    the anti-SLAPP statute.").

3           Accordingly, San Francisco has shown that Plaintiff's causes of action, with the exception

4    of Plaintiff's causes of action relating only to the 1999 private contractual activity, are protected

5    activity within the meaning of the anti-SLAPP statute.  The Court questions whether this result,

6    which has the practical effect of imposing an automatic attorneys' fees and costs sanction on every

7    plaintiff who alleges a malicious prosecution cause of action under California law against a public

8    official who has immunity under the California Government Code, even where an identical § 1983

9    claim is found meritorious, was intended (or even foreseen) by the California legislature when it

10   enacted the statute.  But the Court's reservations about the wisdom as a policy matter of applying

11   the anti-SLAPP statute to the circumstances here cannot override its reading of the controlling law

12   mandating this result.

13           3.      Probability of Prevailing on the Merits

14          The Court now turns to the question of whether Plaintiff has established with evidence a

15   "probability" of prevailing on his malicious prosecution cause of action.

16          The Ninth Circuit has held that a plaintiff resisting an anti-SLAPP motion "must show a

17   reasonable probability of prevailing in its claims for those claims to survive dismissal."  *Mindys*

18   *Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (quotation marks omitted).  In the

19   context of the anti-SLAPP statute, "[r]easonable probability" means "only a minimum level of

20   legal sufficiency and triability."  *Id.* (quotation marks and citation omitted).  A plaintiff must "state

21   and substantiate a legally sufficient claim," *id.* at 598–99, based on "the pleadings, and supporting

22   and opposing affidavits stating the facts upon which the liability or defense is based," Cal. Code

23   Civ. Proc. § 425.16(b)(2). "Put another way, the plaintiff must demonstrate that the complaint is

24   both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a

25   favorable judgment if the evidence submitted by the plaintiff is credited."  *Id.* at 599 (quotation

26   marks omitted).  In short, "the required probability that [a plaintiff] will prevail need not be high."

27   *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010).

28          For the reasons stated above in the context of San Francisco's motion to dismiss, Plaintiff's

United States District Court
Northern District of California

United States District Court
Northern District of California

California causes of action are dismissed with prejudice except for his 2007 civil rights claim under California Civil Code § 52.1 and his 2010 false arrest and civil rights claims. With respect to the causes of action dismissed with prejudice, the Court grants San Francisco's motion to strike. With respect to the other California causes of action: Plaintiff states legally sufficient claims (with the exception of the 2007 civil rights claim) and, based on the transcripts and other records from the preliminary hearing preceding his 2014 criminal trial, the Court finds that Plaintiff meets the low bar to show a reasonable probability of success on the merits. Accordingly, the Court denies San Francisco's motion to strike as to those causes of action. And because it remains to be seen whether Plaintiff can amend his complaint to state a claim as to his 2007 civil rights cause of action, the Court reserves judgment on that claim. San Francisco is directed to file a declaration detailing what it expended defending the stricken causes of action only. The Court will then issue a separate order determining the appropriate amount to order Plaintiff to pay.

## V.     CONCLUSION

For the reasons set forth above, San Francisco's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Plaintiff's causes of action relating to the 1998 private contract dispute against City Attorney Herrera alone for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing are **DISMISSED WITH PREJUDICE**;

2.  Plaintiff's causes of action relating to the 1999 building code enforcement activity against all Defendants for intentional infliction of emotional distress, racial and national origin discrimination under California Civil Code § 52.1(b), and racial and national origin discrimination and conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983 and 1985 are **DISMISSED WITH PREJUDICE**;

3.  Plaintiff's causes of action relating to the 1999, 2000, and 2007 building code enforcement activity against all Defendants for intentional infliction of emotional distress, malicious prosecution, and racial and national origin discrimination and conspiracy to commit the same under 42 U.S.C. §§ 1981, 1983, and 1985 are **DISMISSED WITH PREJUDICE**;

4.    Plaintiff's cause of action relating to the 2007 building code enforcement activity against all Defendants for racial and national origin discrimination under California Civil Code § 52.1(b) is **DISMISSED WITH LEAVE TO AMEND** his complaint on this cause of action within 30 days to the extent that he can allege he filed a government claim;

5.    Plaintiff's causes of action relating to his 2010 arrest and 2014 prosecution against all Defendants for malicious prosecution and intentional infliction of emotional distress under California law are **DISMISSED WITH PREJUDICE**;

6.    San Francisco's motion to dismiss Plaintiff's causes of action relating to his 2010 and 2014 prosecution against all Defendants for false arrest and racial and national origin discrimination under California Civil Code § 52.1(b) is **DENIED**; and

7.    San Francisco's motion to dismiss Plaintiff's claims relating to his 2010 and 2014 prosecution against all Defendants for racial and national origin discrimination and conspiracy under 42 U.S.C. §§ 1981, 1983, and 1985 is **DENIED**.

Additionally, San Francisco's special motion to strike is **GRANTED IN PART** and **DENIED IN PART** as follows: the motion is **GRANTED** with respect to any claim that was dismissed with prejudice.  San Francisco is **DIRECTED** to submit by July 15, 2016, a declaration establishing its attorneys' fees and costs with respect to the stricken causes of action alone.

Finally, the Court **SETS** a case management conference for July 19, 2016, at 2:00pm to discuss the plan for further proceedings in this matter.

**IT IS SO ORDERED.**

Dated:  July 11, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

21